**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TYRONE "TY" ARMWOOD,** | ) |
| | ) **Case No.: 1:26-cv-12481** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **SUNRUN, INC.,** | ) |
| | ) |
| **Defendant.** | ) **Jury Trial Demanded** |
| | ) |

## COMPLAINT

Plaintiff, Tyrone "Ty" Armwood ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Defendant, Sunrun, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq.*

4. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq, have occurred or been complied with.

6. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

7. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

8. This Complaint has been filed within ninety (90) days of her receipt of the EEOC's Dismissal and Notice of Right to Sue.

## PARTIES

9. At all times material to the allegations of this Complaint, Plaintiff, resides in Cook County in the State of Illinois.

10. At all times material to the allegations in this Complaint, Defendant is an entity doing business in and for Cook County whose address is 15637 S 94th Ave, Orland Park, IL 60462-4722.

11. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

12. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, 42 U.S.C. § 12111(5)(A), and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

13. Plaintiff was employed by Defendant as a Retail Specialist from on or about February 9, 2026, until her termination on or about May 16, 2026.

14. Plaintiff suffers from physical impairments, specifically heart failure.

15. Plaintiff's heart failure requires her to rely on a LVAD machine to support her condition and allow for the circulation of blood through her heart, and also requires regular checkups with

her medical providers.

16. Plaintiff's heart failure substantially limits one or more major life activities, including the functioning of bodily systems.

17. Despite this disability, Plaintiff was qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

18. Plaintiff is a "qualified individual" as defined under the ADA.

19. Plaintiff is "disabled" as defined under the ADA.

20. Plaintiff is a member of a protected class because of her disability.

21. In or around March 2026, Plaintiff stored her purse, which contained batteries for her LVAD machine, inside a podium at the store; by doing so, she did not violate any Company policies.

22. Laura Jipson, Defendant's Retail Leader, removed the podium and told Plaintiff, "We are not supposed to just be standing at the podium. We have to be working."

23. Before this incident, Plaintiff had received good reviews from others, and storing her belongings in the podium had not been an issue.

24. Plaintiff informed Jipson that her LVAD batteries were stored inside the podium and that she needed them for her LVAD machine.

25. In making this disclosure, Defendant was placed on notice of Plaintiff's disability and need for reasonable accommodation.

26. Jipson asked Plaintiff whether she had a car.

27. When Plaintiff explained that she did not have a car, Jipson told Plaintiff to "be friendly" with the nearby Home Depot employees so that Plaintiff could find places to store her belongings, completely disregarding Plaintiff's need for accommodation and undermining her request.

28. Despite Plaintiff explaining that the podium contained batteries necessary for her medical condition, Jipson nevertheless removed the podium.

29. Defendant failed to engage in any interactive process to find a reasonable accommodation, or offer an alternative accommodation after Plaintiff requested an accommodation.

30. Following this incident, and Plaintiff's disability disclosure, Jipson regularly antagonized and micromanaged Plaintiff whenever Jipson was present in the store.

31. Prior to the disclosure, Jipson would be positive towards Plaintiff, interact with her, and greet her regularly.

32. After the disclosure, Jipson's behavior changed and instead of greeting Plaintiff, Jipson would state, "Hi" and walk away.

33. On or around Easter weekend 2026, Jipson informed Plaintiff that she intended to shadow Plaintiff during one of Plaintiff's shifts.

34. At the time, Plaintiff was not feeling well due to her disability and was also experiencing homelessness.

35. Nevertheless, Plaintiff reported to work and performed her assigned job duties.

36. Because Plaintiff was not feeling well, she was not moving as quickly as she normally did.

37. Plaintiff explained to Jipson that her heart problem was causing her to feel weak and tired, but she was still capable of preforming the job duties.

38. Although Jipson stated that she was shadowing Plaintiff, Jipson did not remain with Plaintiff while Plaintiff worked and, at one point, Plaintiff observed Jipson speaking with another employee rather than observing Plaintiff's work.

39. Despite this, Jipson became upset with Plaintiff for continuing to perform her job duties without Jipson accompanying her.

40. Plaintiff worked her scheduled hours until her designated lunch break.

41. Plaintiff followed company procedure by clocking out for lunch and notifying the group chat that she was going to lunch.

42. Jipson questioned why Plaintiff had not personally located Jipson to inform her that Plaintiff was taking her lunch break, even though Jipson had not been present and Plaintiff had followed the applicable procedure.

43. Plaintiff asked Jipson whether Plaintiff could make up the time she had already lost while clocked out and then discuss the issue afterward.

44. Instead, Jipson instructed Plaintiff to leave work for the remainder of the day.

45. Plaintiff then engaged in protected activity and reported the incident to her supervisor, who agreed that Jipson had acted improperly and restored the time Plaintiff had lost.

46. This incident was part of an ongoing pattern of Jipson antagonizing and micromanaging Plaintiff, something that she did not do to non-disabled employees.

47. In or around April 2026, Plaintiff contacted the head manager regarding Jipson's treatment of Plaintiff and was advised to contact Human Resources ("HR").

48. Plaintiff proceeded to contact Human Resources and informed them of her disability and further requested a reasonable accommodation for her disability, including the ability to sit down periodically to rest while performing her job duties.

49. In making this request, Plaintiff was engaging in protected activity.

50. Plaintiff observed other, similarly situated non-disabled employees being permitted to sit while working.

51. Despite this, Human Resources required Plaintiff to obtain medical documentation in support of a request for reasonable accommodation related to her heart failure and gave her until

May 19, 2026 to do so.

52. Before Plaintiff formally submitted her accommodation documentation, Jipson told Plaintiff that there was "no sitting on the job."

53. Plaintiff also reported to management the issues involving the podium and Jipson's treatment of Plaintiff, thereby making a protected complaint of disability-based discrimination.

54. On or about May 7, 2026, Plaintiff observed another Retail Specialist using the podium in the store while Jipson was present.

55. Jipson did not object to the other Retail Specialist's use of the podium.

56. Based on Jipson's prior conduct, Plaintiff had understood that employees were not permitted to use the podium.

57. During her employment, Plaintiff also experienced occasions when her blood pressure was low; despite Defendant being aware, she received little sympathy and did not receive any accommodation from management.

58. On or about May 16, 2026, before Plaintiff had a chance to submit her medical documentation, Jipson terminated Plaintiff's employment.

59. Jipson stated that Plaintiff was being terminated because she had allegedly "not [made] 2 sales in one month within the 90 day probation."

60. Plaintiff, however, had made more than two sales during her employment.

61. Before terminating Plaintiff, Defendant required Plaintiff to erase her iPad.

62. As a result, Plaintiff was prevented from retaining evidence of her sales before her termination.

63. Upon information and belief, Defendant maintains other records reflecting Plaintiff's sales made during her employment.

64. Plaintiff's termination occurred approximately three days before the May 19, 2026 deadline for Plaintiff to provide her medical documentation in support of her accommodation request.

65. Defendant ultimately terminated Plaintiff's employment on the basis of her disability and her need for reasonable accommodation.

66. Plaintiff requested reasonable accommodations related to her disability, including the ability to sit down during periods of fatigue or flare-ups.

67. Defendant effectively denied Plaintiff's request for reasonable accommodation and failed to engage in the interactive process with Plaintiff to determine an appropriate accommodation.

68. Defendant and its employees also subjected Plaintiff to harassment and disparate treatment related to her disability and her need for accommodation.

69. Plaintiff suffered multiple adverse employment actions including, but not limited to, termination.

70. Other similarly situated non-disabled employees were not subject to the same treatment as Plaintiff.

71. Plaintiff met or exceeded performance expectations throughout the entire duration of her employment with Defendant.

72. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of income, loss of employment benefits, emotional distress, humiliation, embarrassment, and other damages.

73. Defendant's disability-based discrimination, failure to accommodate, and retaliation, coupled with Defendant's termination of Plaintiff, took a heavy mental toll on Plaintiff, who suffered and continues to suffer severe mental anguish and distress.

74. Plaintiff can show that she engaged in statutorily protected activity, a necessary component

of her retaliation claim, because Plaintiff requested reasonable accommodations for her disability.

**COUNT I**
**Violations of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

75. Plaintiff repeats and re-alleges paragraphs 1-74 as if fully stated herein.

76. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

77. Plaintiff met or exceeded performance expectations throughout the duration of her employment with Defendant.

78. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

79. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

80. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

81. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

82. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

83. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

84. Plaintiff repeats and re-alleges paragraphs 1–74 as if fully stated herein.

85. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment

practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

86. Defendant knew or should have known of the harassment.

87. The disability-based harassment was severe or pervasive.

88. The disability-based harassment was offensive subjectively and objectively.

89. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

90. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

91. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

92. Plaintiff repeats and re-alleges paragraphs 1-74 as if fully stated herein.

93. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

94. Plaintiff is a qualified individual with a disability.

95. Defendant was aware of the disability and the need for accommodations.

96. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

97. Plaintiff's reasonable accommodations that were requested were not an undue burden on the Defendant.

98. Defendant did not accommodate Plaintiff's disability.

99. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

100. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

101. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of the Americans with Disabilities Act**
**(Retaliation)**

102. Plaintiff repeats and re-alleges paragraphs 1-74 as if fully stated herein.

103. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

104. During Plaintiff's employment with Defendant, Plaintiff disclosed her disability to Defendant and requested reasonable accommodation.

105. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

106. In response to Plaintiff's request, Defendant failed to engage in the interactive process to determine what accommodations would have been reasonable.

107. Defendant then terminated Plaintiff after her request for reasonable accommodation.

108. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting a reasonable accommodation, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

109. Plaintiff suffered an adverse employment action in retaliation for engaging in protected

activity.

110. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

111. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay;

b. Payment of interest on all back pay and benefits recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 12th day of October, 2026.

/s/ *Nathan C. Volheim*
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**

2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ ***Sophia Steere***
**SOPHIA STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575 - 8188
ssteere@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ ***Jake Fondel***
**JAKE FONDEL, ESQ.**
IL Bar No.: 6354446
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 272-5953
Fax (630) 575 - 8188
jfondel@atlaslawcenter.com
*Attorney for Plaintiff*